OPINION
{¶ 1} Defendant-appellant, David Simms, appeals from a Columbiana County Common Pleas Court judgment convicting him of gross sexual imposition, after a jury trial.
 {¶ 2} The allegations in this case date back to 1983 and 1984. At that time, the victim Kendra Prince was six or seven years old. She resided with her three sisters and parents in Wellsville. While her parents worked, Becky Simms babysat Kendra and her sisters.
 {¶ 3} On some occasions while Becky was babysitting, she would leave the children in her husband's care in order to go home to tend to her own child. Kendra testified that on several occasions while Becky was gone, appellant entered her bedroom and had sexual contact with her. Kendra's sister, Kristen, also testified that appellant molested her on several occasions. Neither sister told anyone of the abuse for many years. Kristen eventually told her parents what appellant had done to her when she was in the ninth or tenth grade. By this time, Kendra was in the eighth or ninth grade. Once Kristen told her parents what had happened, Kendra told her mother, Sally Prince, about appellant's sexual contact with her. Kendra made this disclosure to her mother sometime in 1991. However, Mrs. Prince did not contract the authorities at that time.
 {¶ 4} In 1994, the Columbiana County Department of Job and Family Services (CCDJFS) investigated the girls' allegations. However, the investigation did not lead to any charges being filed.
 {¶ 5} In April 2004, a prosecutor's investigator re-opened the case based on new information. Specifically, three witnesses stated that appellant had admitted having sexual contact with both sisters. Based on this new information, on May 27, 2004, a Columbiana County grand jury indicted appellant on one count of gross sexual imposition, a third degree felony in violation of R.C. 2907.05(A)(4).
 {¶ 6} Appellant subsequently filed a motion to dismiss the indictment, alleging that the statute of limitations had expired in this case. The trial court held a hearing on the motion and overruled it.
 {¶ 7} Appellant next filed a motion in limine to prohibit plaintiff-appellee, the State of Ohio, from introducing Kristen's testimony regarding other acts between appellant and her. Again the court held a hearing on appellant's motion. It determined that Kristen's testimony would be admissible, but limited. It also determined that no witness to whom appellant made an admission about Kristen could testify about that conduct.
 {¶ 8} The case proceeded to a jury trial. The jury returned a guilty verdict. Subsequently, the trial court determined that appellant was a sexually oriented offender and sentenced him to 18 months in prison. Appellant filed a timely notice of appeal on January 10, 2005.
 {¶ 9} Appellant raises two assignments of error, the first of which states:
 {¶ 10} "THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S MOTION TO DISMISS THE INDICTMENT BASED ON A VIOLATION OF THE STATUTE OF LIMITATIONS."
 {¶ 11} Appellant asserts that a six-year statute of limitations applies in this case. He argues this statute of limitations expired sometime during 1997. He notes that Mrs. Prince learned of the alleged abuse in 1991. Since Mrs. Prince was a "responsible adult," appellant claims that the statute of limitation began to run once she learned of the allegations. He points out that Mrs. Prince did not contact the police or CCDJFS. Since Mrs. Prince is a registered nurse, appellant argues that she falls into the statutory definition of "responsible adult." See R.C. 2151.421.
 {¶ 12} Pursuant to R.C. 2901.13(A)(1), the statute of limitations for a felony is generally six years. However, on March 9, 1999, the legislature amended R.C. 2901.13 to extend the statute of limitations for certain offenses to 20 years. Included in those offenses are violations of R.C. 2907.05, for which appellant was indicted and convicted. See R.C. 2901.13(A)(3)(a). The amendment to R.C. 2901.13 applies to an offense committed prior to the effective date of the amendment if prosecution for the offense was not barred under R.C. 2901.13 as it existed on the day prior to the effective date. State v. Steele,155 Ohio App.3d 659, 802 N.E.2d 1127, 2003-Ohio-7103, at ¶ 5.
 {¶ 13} Furthermore, pursuant to R.C. 2901.13(F), the statute of limitations shall not run during any time when the corpus delicti of the crime remains undiscovered. This provision tolls the running of the statute of limitations.
 {¶ 14} Appellant argues that the Ohio Supreme Court's holding in State v. Hensley (1991), 59 Ohio St.3d 136, 571 N.E.2d 711, does not apply to the facts of this case. In Hensley, the Court examined when the corpus delicti of a crime is "discovered" for the purposes of R.C. 2901.13(F). The court held that, "[f]or purposes of R.C. 2901.13(F), the corpus delicti of crimes involving child abuse or neglect is discovered when a responsible adult, as listed in R.C. 2151.421, has knowledge of both the act and the criminal nature of the act." Id. at the syllabus. The Court specifically stated the corpus delicti was not considered "discovered" when the parents learned of the crime. Id. at 141. It reasoned, "[a] parent, for sundry reasons, may not always report the alleged sexual abuse or neglect in a timely manner." Id. Under the facts of Hensley, the Court found that the corpus delicti was discovered, for purposes of starting the statute of limitations, not when the parents of the abused children learned of the abuse, but when the abused children's counselor learned of their abuse since he was a responsible adult as defined by R.C.2151.421.
 {¶ 15} "Responsible adults" listed in R.C. 2151.421(A)(1)(b) include registered nurses and school teachers.
 {¶ 16} Mrs. Prince testified that Kendra disclosed the abuse to her sometime in 1991. (10/8/04 Tr. 8). She did not contact the authorities. (10/8/04 Tr. 9). Mrs. Prince is a registered nurse. (10/8/04 Tr.11). However, she testified that she received the information from her daughter about the abuse as mother, not as a nurse. (10/8/04 Tr. 11-12). Mrs. Prince also testified that she spoke to some close friends and family about what happened to Kendra because they consoled her. (10/8/04 Tr. 9, 13). These people included her sister, who is a retired school teacher, and her best friend, who is also a registered nurse. (10/8/04 Tr. 13).
 {¶ 17} Appellant contends that since Mrs. Prince told people outside of her family about Kendra's allegations, she should have reported the allegations to the authorities. Furthermore, he asserts that because Mrs. Prince is a registered nurse, she knows the importance of timely notification of any alleged sexual abuse cases.
 {¶ 18} Initially it may seem that since Mrs. Prince is a nurse, her sister is a retired school teacher, and her best friend is also a nurse, as such, they may have had a duty to report Kendra's allegations upon learning of them, their knowledge of the allegations did not trigger the running of the statute of limitations.
 {¶ 19} R.C. 2151.421(A)(1)(a) specifically provides:
 {¶ 20} "No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity
and knows or suspects that a child under eighteen years of age * * * has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion to the entity or persons specified in this division." (Emphasis added.)
 {¶ 21} Reading the plain language of the statute leads to the conclusion that since neither Mrs. Prince nor her confidants were acting in their professional capacities when they learned of Kendra's allegations, they were under no legal duty to report the allegations. They are "responsible adults." However, because they were under no legal obligation to report the allegations, their knowledge did not start the running of the statute of limitations.
 {¶ 22} The Ninth District has also addressed this issue. InState v. Rosenberger (1993), 90 Ohio App.3d 735,630 N.E.2d 435, the defendant was convicted of sexual battery. The alleged sexual battery occurred from 1981 to 1985. The victim was between the ages of nine and 14 at the time. The defendant was not indicted until October 1992. On appeal, the defendant argued, among other things, that the charge was barred by the six-year statute of limitations then in effect.
 {¶ 23} In that case, the victim's mother learned of the abuse in 1985 and discussed it with her neighbor. The neighbor happened to be a paramedic. The state conceded that a paramedic was a "responsible adult" as defined in Hensley, supra, because he fell under the rubric of "other health care professionals" as enumerated in R.C. 2151.421. But the state argued that merely establishing that a responsible adult had acquired knowledge of sexual abuse is not enough to commence the limitation period. Instead, it argued that the limitation period only begins to run if the responsible adult acquired the requisite knowledge while acting in his or her official or professional capacity. The Ninth District agreed and stated:
 {¶ 24} "In establishing the rule in Hensley, the Supreme Court stated that `[o]ur objective is to strike a proper balance between the need to place some restriction on the time period within which a criminal case may be brought, and the need to ensure that those who abuse children do not escape criminal responsibility for their actions.' In striking this balance, the court found that, even though the victim may know the abuse is wrong or even criminal, the ends of justice would not be served by imposing the burden to report the abuse upon a child who, for traumatic reasons, would naturally be inhibited from revealing it. Consequently, the court decided that the ends of justice would best be served by tolling the limitation period until a responsible adult, as listed in R.C. 2151.421, obtained knowledge of the sexual abuse because these individuals were under a statutory duty to immediately report any suspected sexual abuse to certain governmental agencies.
 {¶ 25} "This statutory duty to report suspected sexual abuse, however, arises only if an individual listed in R.C. 2151.421 `is acting in his official or professional capacity.' The language in the statute is clear and unambiguous and establishes a condition precedent to the legal duty to report sexual abuse. Therefore, under Hensley, the ends of justice would not be served if the limitation period began to run when the responsible adult was not acting in his official or professional capacity because the responsible adult would not be under a statutory duty to report the suspected abuse." (Internal citations omitted.) Id. at 739.
 {¶ 26} The court determined that the victim's mother confided in her neighbor as a personal friend and did not confer with him in his professional capacity as a paramedic. Therefore, the court concluded that this event did not start the running of the statute of limitations.
 {¶ 27} Given the plain meaning of R.C. 2151.421(A)(1)(a), the Court's decision in Hensley, and the reasoning set out inRosenberger, the statute of limitations did not begin to run when Mrs. Prince learned of Kendra's allegations or when she confided in others about the allegations. Therefore, we must determine when the statute of limitations did begin to run.
 {¶ 28} Mrs. Prince testified that children's services learned of Kendra's allegations in January 1994. (10/8/04 Tr. 10). Linda Morris, a retired social worker with the CCDJFS, testified that the CCDJFS received a complaint concerning Kendra on January 18, 1994. (10/8/04 Tr. 10, 20). Thus, the statute of limitations began to run on this date.
 {¶ 29} In 1994, the statute of limitations for gross sexual imposition was only six years. But as noted above, on March 9, 1999, the legislature amended R.C. 2901.13 to extend the statute of limitations on certain offenses including gross sexual imposition to 20 years. This amendment applies to an offense committed prior to the effective date of the amendment if prosecution for the offense was not barred under R.C. 2901.13 as it existed on the day prior to the effective date. Steele,
155 Ohio App.3d at ¶ 5; State v. Crooks, 152 Ohio App.3d 294,2003-Ohio-1546, 787 N.E.2d 678, at ¶ 11; State v. Barker, 6th Dist. No. L-01-1290, 2003-Ohio-5417, at ¶ 15.
 {¶ 30} Since the statute of limitations started on January 18, 1994, it would not expire under the six-year limit until January 18, 2000. Thus, it falls into the category of an offense committed before the effective date of the amendment and prosecution was not barred under the previous version of R.C.2901.13 as it existed on March 8, 1998. Thus, the 20-year statute of limitations applies in this case.
 {¶ 31} Consequently, the statute of limitations would not expire in this case until January 18, 2014. Therefore, the trial court did not err in overruling appellant's motion to dismiss the indictment. Accordingly, appellant's first assignment of error is without merit.
 {¶ 32} Appellant's second assignment of error states:
 {¶ 33} "THE TRIAL COURT ERRED IN PERMITTING OTHER ACTS EVIDENCE IN VIOLATION OF EVIDENCE RULE 404(B)."
 {¶ 34} Appellant filed a motion in limine to prohibit Kristen from testifying about "other acts." The court determined that Kristen could testify as to those things she alleged appellant did to her, with the exception that she could not testify that he digitally penetrated her. It also determined that other witnesses could not testify regarding any admissions appellant may have made regarding his contact with Kristen.
 {¶ 35} Appellant argues that the court should not have admitted Kristen's testimony because it was highly prejudicial. He claims that since his identity was not at issue, the only way appellee could properly introduce this evidence was if the alleged other acts formed part of the immediate background of the crime charged. Since Kristen did not testify as to a time frame of when the alleged abuse occurred, appellant contends her testimony was inadmissible because appellee could not prove that it was part of the immediate background of the crime charged.
 {¶ 36} While appellant filed a motion in limine to prohibit Kristen's testimony about his contact with her, at trial appellant failed to object to her testimony. A ruling on a motion in limine is only a preliminary ruling. State v. Maurer (1984),15 Ohio St.3d 239, 259-60, 473 N.E.2d 768. Therefore, in order to preserve the issue for appeal, an objection to the evidence must be raised during trial in order to properly preserve the question for appeal and to avoid a waiver of such a challenge. Id. Since appellant failed to raise an objection at trial to Kristen's testimony, he has waived this issue on appeal. But even if appellant had preserved this issue for review, the result would be the same.
 {¶ 37} The admission or exclusion of evidence is within the trial court's discretion. State v. Sage (1987),31 Ohio St.3d 173, 180, 510 N.E.2d 343. Thus, we will not reverse the trial court's decision absent an abuse of discretion. Abuse of discretion requires more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Clark (1994), 71 Ohio St.3d 466, 470,644 N.E.2d 331.
 {¶ 38} Kristen testified that on occasion, appellant entered the bedroom she shared with Kendra and touched her inappropriately. (11/23/04 Tr. 354-55). Kristen also testified about when this contact occurred. She stated that sometimes when Becky babysat for her and her sisters, Becky would leave to go home and tuck in her children. (11/23/04 Tr. 352). Kristen stated that sometimes appellant would send Kendra up to bed, while she remained downstairs. (11/23/04 Tr. 352-53).
 {¶ 39} Appellee asserts that it introduced this testimony to demonstrate appellant's scheme and plan. Pursuant to Evid.R. 404(B), evidence of other crimes, wrongs, or acts is inadmissible to prove the character of a person in order to show that he acted in conformity therewith. Such evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B).
 {¶ 40} In order to determine whether Kristen's testimony fits this 404(B) exception, we must also consider Kendra's testimony.
 {¶ 41} Kendra testified specifically about what appellant did to her. Kendra testified that when Becky babysat for her and her sisters, sometimes appellant would come with her. (11/23/04 Tr. 283). She stated that occasionally Becky would leave and appellant would be the only adult in the house. (11/23/04 Tr. 283). She stated that appellant came into her room when she was in bed and had sexual contact with her. (11/23/04 Tr. 285-89).
 {¶ 42} The trial court did not abuse its discretion in permitting Kristen to testify about appellant's actions. Kristen's testimony helped to explain appellant's scheme, plan, and opportunity. It seems that appellant had a plan to get his wife to leave him alone with the girls so that he would have an opportunity to abuse them. The girls' testimony together demonstrated this plan and appellant's opportunity.
 {¶ 43} Additionally, the trial court took precautions to ensure that the jury only considered Kristen's testimony for a limited purpose. Prior to Kristen's testimony, the court instructed the jury:
 {¶ 44} "Before — we are about to receive some testimony from Kristen Prince, and you'll hear some testimony about allegations of another wrongful act committed by the Defendant, other than the offense for which he's been charged.
 {¶ 45} "This testimony will be received for a limited purpose only. It is not received, and may not be considered by you, to prove the character of the Defendant in order to prove that he acted in accordance with that character.
 {¶ 46} "If you find that the testimony about this other wrongful act is true, and that the Defendant committed it, you may consider that evidence only for the purpose of deciding whether it proves the Defendant's opportunity, preparation, or plan, to commit the offense for which he is on trial here. It may be considered for no other purpose." (11/23/04 Tr. 345-47).
 {¶ 47} This cautionary instruction made clear to the jury before they even heard Kristen's testimony that they could only consider it for a few, limited purposes. The court then allowed Kristen to testify.
 {¶ 48} Furthermore, appellee presented overwhelming evidence of appellant's guilt. In addition to Kendra's and Kristen's testimony, the following testimony supports appellant's conviction.
 {¶ 49} Mrs. Prince testified that in 1991, Kendra told her appellant had abused her. (11/23/04 Tr. 256). And three witnesses testified that appellant admitted to them what he had done. When CCDJFS began investigating appellant, apparently he told some people about the investigation. Penny Perorazio, appellant's ex-girlfriend, testified that appellant told her about the investigation. (11/23/04 Tr. 419). She stated that she did not believe that he had done anything wrong, but then he admitted that he was guilty. (11/23/04 Tr. 419-20). Her son, Shawn Gattrell, also stated that appellant admitted what he had done. Gattrell testified that appellant told him that he touched the girls and masturbated on them. (11/23/04 Tr. 331). And Candy Bangor, appellant's next-door neighbor, testified that appellant confessed to her that while Becky was babysitting he would call her and tell her that her boys needed her. (11/23/04 Tr. 405). He told Bangor that he then went to the Princes' home where he went into one of the girls' rooms, turned her over, and ejaculated on her. (11/23/04 Tr. 405). Bangor stated that appellant was upset and crying when he told her this. (11/23/04 Tr. 406).
 {¶ 50} Thus, given the amount of evidence against appellant, even if the court had erred in admitting Kristen's testimony, any error was harmless. Accordingly, appellant's second assignment of error is without merit.
 {¶ 51} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs
Waite, J., concurs